1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   CFA NORTHERN CALIFORNIA, INC.,              No. C 04-5049 CW

12           Plaintiff,                          ORDER GRANTING
                                                 IN PART MOTION
13       v.                                      TO DISMISS AND
                                                 DENYING MOTION
14   CRT PARTNERS LLP, CLAIRE THOMAS and         TO TRANSFER
     ROBERT CAMPBELL,                            VENUE
15
             Defendants.
16
     _____
17

18

19       Defendants move for dismissal of this action pursuant to

20   Federal Rules of Civil Procedure Rule 12(b)(2) and 12(b)(6).  In

     the alternative, Defendants move under 28 U.S.C. § 1404(a) for
21
     an order transferring this action to the District of Arizona.
22
     Plaintiff opposes the motions.  The motions were heard on June
23
     24, 2005.  Having considered the parties' papers, the evidence
24
     cited therein and oral argument on the motions, the Court grants
25
     Defendants' motion to dismiss the claims against Defendant
26
     Robert Campbell and denies their motion to dismiss the claims
27
     against Defendant CRT and Defendant Claire Thomas and denies
28

United States District Court

For the Northern District of California

1   Defendants' alternative motion to transfer venue.

2                          BACKGROUND

3        Except where indicated otherwise, the following information

4   is taken from the Amended Complaint and the Affidavit of Claire

5   Thomas appended to Defendants' motion.  Plaintiff CFA Northern

6   California, Inc. is a California corporation having its

7   principal place of business in California.  Defendant CRT

8   Partners, LLP (CRT) is an Arizona limited liability partnership

9   having its principal place of business in Arizona.  Defendants

10  Claire Thomas and Robert Campbell are United States citizens and

11  residents of Arizona.

12       CRT operates eighteen Jack-in-the-Box restaurants in or

13  near Tucson, Arizona, and has done so for at least ten years.

14  The restaurants are situated on land that is leased to CRT.

15  Claire Thomas is the managing partner of CRT.  Robert Campbell

16  is also a partner in CRT.  Thomas declares that the owners of

17  CRT own two limited liability companies that own the land on

18  which fourteen of the eighteen Jack-in-the-Box restaurants are

19  situated.  The other four restaurants are situated on land

20  leased from other parties.  Jack-in-the-Box is a California

21  corporation headquartered in San Diego.  CRT signed Jack-in-the-

22  Box franchise agreements that call for interpretation and

23  enforcement under California law and provide for forum and venue

24  in California for resolving disputes.  CRT also apparently

25  receives goods from California suppliers.  While Defendants

26  contend that they order supplies and receive invoices from an

27  Arizona distribution center warehouse, they do not dispute that

28                              2

**United States District Court**
For the Northern District of California

the goods originate in California.  Thomas has made at least one trip annually to Jack-in-the-Box headquarters in California since the franchise agreements have been in place.

Plaintiff is a financial intermediary that introduces potential purchasers of companies and businesses to potential sellers.  Plaintiff originally contacted Defendants about a potential business venture.  Thomas wished to retire from the restaurant operation business, and her partners at CRT had agreed to find a buyer for the business.  After several phone calls and letters between Plaintiff's representative, Jeff Johnson, and Thomas, Thomas called Johnson and they agreed to meet in April, 2003 in California to discuss possible assistance Plaintiff might provide CRT in selling its business.  Thomas asserts that this meeting occurred during a trip she had taken to visit her sister.  Plaintiff alleges that at that meeting Thomas told Johnson that she and Campbell each owned fifty percent of CRT.

Negotiations continued in Arizona.  On or about May 16, 2003, Plaintiff entered into a contract with CRT for the purpose of assisting CRT in selling its franchise business.  The contract provided that CRT would pay Plaintiff for its services if a transaction transferring ownership to an "Interested Party," as further defined by the contract, occurred, even as long as a year after the termination of the contract.  The contract explicitly excluded real estate from the business interest for which Plaintiff would seek a buyer.  The contract provided that, in case of a dispute, the parties would seek

3

mediation in Arizona, and Arizona law would apply to the dispute.  Thomas and Campbell signed the contract for CRT.

Plaintiff prepared a "Descriptive Report," describing the business for sale, that included references to the leases for the land on which the restaurants were situated.  Plaintiff identified approximately forty-two possible acquirers of CRT, but none made an offer CRT found acceptable.  Most of the work Plaintiff did to fulfill the contract occurred in California. In January, 2004, CRT terminated its contract with Plaintiff.

Before signing the contract, Thomas had told Johnson that she would like to sell to Laura Olguin, CRT's Vice-President of Operations, but could not, because of Jack-in-the-Box's franchisee requirements.  Later, the franchisee requirements were changed such that Olguin became a qualified purchaser.  On or about May 8, 2004, CRT purchased Thomas's interest in the partnership.  Olguin was listed as a partner in CRT in the May 8, 2004 purchase agreement.  Thomas asserts that she and Campbell had sold Olguin a ten percent interest in the partnership in 2000.  The purchase agreement excluded Thomas's interest in the entities that owned the real estate on which fourteen of the restaurants were situated and was subject to a condition precedent that CRT's leases be amended to reflect the change in CRT's partners.  Plaintiff alleges that Defendants at first concealed the May 8, 2004 purchase by CRT of Thomas's interest in CRT.  Plaintiff and Defendants dispute whether they intended the May 16, 2003 contract between Plaintiff and CRT to include a possible transaction between CRT and Thomas.

4

1    On November 30, 2004, Plaintiff filed the original
2  complaint against Defendants.  On March 15, 2005, Defendants
3  filed a motion to dismiss.  On March 31, 2005, Plaintiffs filed
4  an amended complaint alleging (1) breach of contract, (2) unjust
5  enrichment, (3) conspiracy to defraud and (4) fraud, and
6  claiming attorney's fees.  On April 22, 2005, Defendants filed
7  this motion.

8                           LEGAL STANDARD

9  I.   Personal Jurisdiction

10    Under Rule 12(b)(2) of the Federal Rules of Civil
11  Procedure, a defendant may move to dismiss for lack of personal
12  jurisdiction.  The plaintiff then bears the burden of
13  demonstrating that jurisdiction exists.  Schwarzenegger v. Fred
14  Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  The
15  plaintiff "need only demonstrate facts that if true would
16  support jurisdiction over the defendant."  Ballard v. Savage, 65
17  F.3d 1495, 1498 (9th Cir. 1995); Fields v. Sedgwick Assoc.
18  Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986).  Uncontroverted
19  allegations in the complaint must be taken as true.  AT&T v.
20  Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).
21  However, the court may not assume the truth of such allegations
22  if they are contradicted by affidavit.  Data Disc, Inc. v.
23  Systems Technology Associates, Inc., 557 F.2d 1280, 1284 (9th
24  Cir. 1977).  Conflicts between in the evidence must be resolved
25  in the plaintiff's favor.  AT&T, 94 F.3d at 588.

26    If material facts are controverted or if the evidence is
27  inadequate, a court may permit discovery to aid in determining

28

United States District Court
For the Northern District of California

whether personal jurisdiction exists.  <u>Data Disc, Inc.</u>, 557 F.2d
at 1285 n.1.  If the submitted materials raise issues of
credibility or disputed questions of fact, the district court
has the discretion to hold an evidentiary hearing in order to
resolve the contested issues.  <u>Id.</u>

     There are two independent limitations on a court's power to
exercise personal jurisdiction over a non-resident defendant:
the applicable State personal jurisdiction rule and
constitutional principles of due process.  <u>Sher v. Johnson</u>, 911
F.2d 1357, 1361 (9th Cir. 1990); <u>Data Disc, Inc</u>, 557 F.2d at
1286.  California's jurisdictional statute is co-extensive with
federal due process requirements; therefore, jurisdictional
inquiries under State law and federal due process standards
merge into one analysis.  <u>Rano v. Sipa Press, Inc.</u>, 987 F.2d
580, 587 (9th Cir. 1993).

     The exercise of jurisdiction over a non-resident defendant
violates the protections created by the due process clause
unless the defendant has "minimum contacts" with the forum State
so that the exercise of jurisdiction "does not offend
traditional notions of fair play and substantial justice."
<u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).
Personal jurisdiction may be either general or specific.

     General jurisdiction exists where the defendant's contacts
with the forum State are so substantial or continuous and
systematic that jurisdiction exists even if the cause of action
is unrelated to those contacts.  <u>Bancroft & Masters, Inc. v.
Augusta Nat'l, Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000).  The

United States District Court
For the Northern District of California

standard for establishing general jurisdiction is "fairly high."
Id.; Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir.
1986).  The defendant's contacts must approximate physical
presence in the forum State.  Schwarzenegger, 374 F.3d at 801.
Factors considered in evaluating the extent of contacts include
whether the defendant makes sales, solicits or engages in
business, designates an agent for service of process, holds a
license, or is incorporated in the forum State.  Bancroft &
Masters, Inc., 223 F.3d at 1086.

Specific jurisdiction exists where the cause of action
arises out of or relates to the defendant's activities within
the forum.  Data Disc, Inc, 557 F.2d at 1286.  Specific
jurisdiction is analyzed using a three-prong test: (1) the
non-resident defendant must purposefully direct its activities
or consummate some transaction with the forum or a resident
thereof; or perform some act by which it purposefully avails
itself of the privilege of conducting activities in the forum,
thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or results from
the defendant's forum-related activities; and (3) the exercise
of jurisdiction must be reasonable.  Lake v. Lake, 817 F.2d
1416, 1421 (9th Cir. 1987).  Each of these conditions is
required for asserting jurisdiction.  Insurance Co. of N. Am. v.
Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

A showing that a defendant "purposefully availed" itself of
the privilege of doing business in a forum State typically
consists of evidence of the defendant's actions in the forum,

United States District Court
For the Northern District of California

such as executing or performing a contract there.

Schwarzenegger, 374 F.3d at 802.  The requirement of purposeful availment ensures that the defendant should reasonably anticipate being haled into the forum State court based on its contacts.  World Wide Volkswagan Corp. v. Woodson, 444 U.S. 286, 297 (1980).  The purposeful availment test is met where "the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." Ballard, 95 F.3d at 1498.

A showing that a defendant "purposefully directed" its conduct toward a forum State "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere."  Schwarzenegger, 374 F.3d at 803.  Purposeful direction may be established under the "effects test" where the defendant (1) committed an intentional act, (2) expressly aimed at the forum State, (3) causing harm that the defendant knows is likely to be suffered in the forum State.  Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

The second factor requires that the claim arise out of or result from the defendant's forum-related activities.  A claim arises out of a defendant's conduct if the claim would not have arisen "but for" the defendant's forum-related contacts. Panavision Int'l v. L.P.U. Toeppa, 141 F.3d 1316, 1322 (9th Cir. 1998).

Once the plaintiff has satisfied the first two factors, the

8

defendant bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting a compelling case that specific jurisdiction would be unreasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985); Haisten v. Grass Valley Medical Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986). Seven factors are considered in assessing whether the exercise of jurisdiction over a non-resident defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum State's affairs, (2) the burden on the defendant, (3) conflicts of law between the forum State and the defendant's home jurisdiction, (4) the forum State's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the dispute, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995); Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).

II.  Failure to State a Claim

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "Each averment of a pleading shall be simple, concise, and direct.  No technical forms of

**United States District Court**
For the Northern District of California

pleading or motions are required."  Fed. R. Civ. P. 8(e).  These rules "do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.  <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990).  Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading.  <u>Id.</u> at 296-97.

III. Venue

If the Court determines that venue is improper in the Northern District of California, it must dismiss or transfer the case.  28 U.S.C. § 1404(a).

Title 28 U.S.C. § 1404(a) provides as follows:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

**United States District Court**
For the Northern District of California

The statute, therefore, identifies three basic factors for district courts to consider in determining whether a case should be transferred:  (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice.  28 U.S.C. § 1404(a).  The Ninth Circuit has held that a fourth factor for the court to consider is the plaintiff's choice of forum.  <u>See Securities Investor Protection Corp. v. Vigman</u>, 764 F.2d 1309, 1317 (9th Cir. 1985).  The <u>Securities Investor</u> court held that, unless the balance of the § 1404(a) factors "is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed."  <u>Id.</u>; <u>see also</u> <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum").  The burden is on the defendant to show that the convenience of parties and witnesses and the interest of justice require transfer to another district.  <u>See</u> <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979).

> For purposes of venue, a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c).

**United States District Court**
For the Northern District of California

DISCUSSION

I. Personal Jurisdiction

    A.  General Jurisdiction

    Defendants contend that this Court has neither general or specific personal jurisdiction over them.  Plaintiff first argues that CRT's business activities in California were sufficiently substantial and continuous to permit this Court to exercise personal jurisdiction over Defendants based on general jurisdiction.  Plaintiff notes that Defendants signed eighteen Jack-in-the-Box franchise agreements that called for interpretation and enforcement under California law and provided for forum and venue in California for resolving any disputes. Plaintiff further alleges that CRT placed orders for and received goods from California suppliers.  Plaintiff alleges that Thomas made at least one trip annually for at least the last ten years to Jack-in-the-Box headquarters in California.

    Defendants do not operate a business in California, although they have interacted with Jack-in-the-Box in California for at least ten years, including by ordering supplies and visiting Jack-in-the-Box headquarters.  However, these interactions with Jack-in-the Box do not suffice for general jurisdiction over Defendants.
The additional fact that Thomas negotiated in California for a contract for financial intermediary services is insufficient to meet the threshold.

B. Specific Jurisdiction

Plaintiff further argues that, at a minimum, this Court has specific jurisdiction over Defendants.  In order to determine whether it may exercise specific personal jurisdiction over Defendants, the Court must analyze each prong of the three-part test for personal jurisdiction enumerated in Lake.

(1) Purposeful Availment and Purposeful Direction

Plaintiff argues that it shows that Defendants meet the purposeful availment requirement of Lake with allegations of Thomas's phone calls to Plaintiff's California office and a meeting between Plaintiff and Thomas in California, in April, 2003, for the purpose of discussing a possible agreement for Plaintiff's services.

Thomas responds that she was traveling to California to see her sister and she met with Johnson while she was on that trip, but this does not contradict Plaintiff's allegations.  While a contract was not signed at that meeting, a contract did result the following month from these and further negotiations.  Thus Thomas took a deliberate action that created an obligation to Plaintiff, a California resident.

Defendants cite Roth for the proposition that simply having a contract with a California resident is insufficient to create specific jurisdiction.  See 942 F.2d at 621.  While that is true, in Roth the court went on to find personal jurisdiction because most of the work called for by that single contract was performed in the forum.  Id. at 622.  Likewise, CRT here signed a contract with a California company that regularly conducts

13

business in California and that did a large part of the work
contracted for in California.  Plaintiff has demonstrated that
Defendant CRT purposely availed itself of the privilege of
conducting business in California, and that Thomas negotiated
for the contract in California.

Plaintiff also claims that Defendants defrauded Plaintiff
in California because Thomas falsely told Plaintiff that Thomas
and Campbell each owned fifty percent of CRT and Thomas
concealed any interest in CRT owned by Olguin.  Plaintiff adds
that Thomas and/or Campbell told it, after the May, 2004
purchase agreement with Olguin was signed, that no transaction
had taken place.

Thus, the amended complaint alleges intentional activity,
partly undertaken by Thomas in California, aimed at a California
corporation that caused harm which Defendants should have known
would be suffered in California by Plaintiff.

These activities are sufficient to establish the first
prong of the requirements for specific jurisdiction over
Defendants CRT and Thomas.  However, Plaintiff does not allege
that Campbell traveled to California, or conducted negotiations
or made false statements here.  Jurisdiction over Campbell may
not be exercised simply by virtue of his partnership in CRT.
See Sher, 911 F.2d at 1365.  Accordingly, the Court may not
exercise personal jurisdiction over him.

(2) Arising Out Of

The second prong of the Lake test addresses whether the
claim arises out of or results from the defendant's forum-

14

related activities.  Applying the <u>Panavision Int'l</u> "but-for"
test, the question, therefore, is this: but for Defendants'
contacts with California, would Plaintiff's claims have arisen?

The answer is clearly no.  If CRT had not entered into the
contract at issue, Plaintiff would have no claims against
Defendants.  It is precisely Thomas and CRT's forum-related
activities that gave rise to each of Plaintiff's claims.  For
purposes of specific personal jurisdiction analysis, Plaintiff's
claims arise out of Thomas and CRT's forum-related activities.

(3) Reasonableness

Finally, the third prong of the <u>Lake</u> test requires that
jurisdiction be reasonable.  Here, the first two prongs of the
requirements for personal jurisdiction over CRT and Thomas have
been met.  Therefore, they must overcome the presumption of
reasonableness by addressing the seven factors listed in <u>Roth</u>.
In Defendants' motion to dismiss, they contend that they meet
the criteria because they did not purposefully interject
themselves into California but instead sought to be governed by
Arizona law.  They also argue that conflicts of law are not
relevant because the contract states that Arizona law will
govern disputes and that Arizona can serve as an alternative
forum.  As well, Defendants assert they will be burdened by
having to litigate in California.  <u>Id.</u>

Defendants do not address Plaintiff's interest in
convenience, California's interest in adjudicating the dispute
or why Arizona would be the most efficient location for judicial
resolution.  An intent to avoid the jurisdiction of another

15

United States District Court

For the Northern District of California

forum is not equivalent to an intent to avoid the benefits of
the other forum's market.  <u>Haisten</u>, 784 F.2d at 1401.
Defendants CRT and Thomas sought out a company based in
California, knowing its base of potential purchasers would be
from California; they sought the benefit of California's market
for investment.  California has a strong interest in assuring
that contracts made with its residents are not breached and that
its residents are not defrauded.  Defendants have given no
evidence that the burden of traveling from Arizona to California
would be great, especially considering that most of the dispute
revolves around interpretation of a written contract.  Because
the Court rules that Defendants CRT and Thomas purposefully
availed themselves of the privilege of conducting business in
California and directed their activities at a California
corporation, their arguments are similarly unpersuasive here.
Defendants CRT and Thomas have not carried their burden to show
that the exercise of specific personal jurisdiction over them in
this case is unreasonable.

This Court's exercise of specific personal jurisdiction
over Defendants CRT and Thomas is reasonable and affords them
the process that they are due.  Defendants' connections with
California are such that they should reasonably anticipate being
haled to court here, <u>World-Wide Volkswagen</u>, 444 U.S. at 297, and
they have established such minimum contacts with California that
the exercise of specific personal jurisdiction over them "does
not offend traditional notions of fair play and substantial
justice."  <u>International Shoe</u>, 326 U.S. at 316.

**United States District Court**
For the Northern District of California

1    Therefore, the Court grants Defendants' motion to dismiss

2  the claims against Campbell and denies the motion to dismiss the

3  claims against CRT and Thomas.

4  II.  Failure to State a Claim

5     Defendants assert that Plaintiff has failed to state a

6  claim upon which relief can be granted.  Defendants argue that

7  Arizona law requires Plaintiff to have a real estate broker's

8  license to perform the contract between Plaintiff and CRT

9  because the restaurants for sale were situated on leased land,

10  and the proposed sale of the business was ancillary to or

11  contingent on the re-negotiation of these leases.  Defendants

12  claim that Plaintiff does not have a real estate broker's

13  license, and therefore that the contract is illegal and cannot

14  be enforced.

15     Arizona Revised Statutes section 32-2101(47)(n)(2004)

16  states that a real estate broker's license is required by a

17  person other than a salesperson who "[e]ngages in any of the

18  acts listed in subdivisions (a) through (m) of this paragraph

19  for the sale or lease of other than real property if a real

20  property sale or lease is a part of, contingent on or ancillary

21  to the transaction." Subsection (i) lists "[a]ssists or directs

22  in the procuring of prospects, calculated to result in the sale,

23  exchange, leasing or rental of real estate or timeshare

24  interests" as one such act.  As well, section 32-2122 states

25  that an "act, in consideration or expectation of compensation,

26  which is included in the definition of a real estate . . .

27  broker, whether the act is an incidental part of a transaction

28                              17

**United States District Court**
For the Northern District of California

or the entire transaction, constitutes the person offering or attempting to perform the act of a real estate broker." Finally, section 32-2152 requires a broker's claim for compensation to allege in the complaint that "the plaintiff was a qualified licensed broker or salesperson at the time the claim arose."   Defendants cite two statements in Plaintiff's Descriptive Report that describe the leases of the real estate on which the restaurants for sale were situated, and potential terms for assuming those leases, as evidence that the assignment of the leases to a buyer was at least ancillary to the contract between Plaintiff and CRT.   Mot. to Dismiss, Ex. A & B.   Thomas declares that the proposed sale was contingent on the transfer of the leases because the businesses could not run without them. Thomas Dec. ¶ 3.

Plaintiff does not allege that it has a real estate broker's license, but instead asserts that the contract between Plaintiff and CRT did not pertain to real estate.   Plaintiff notes that the contract expressly excluded real estate as part of any potential transaction.   The transaction that did occur, that is, the transfer of Thomas's interest to CRT by means of the May 8, 2004 purchase agreement, did not include Thomas's interest in the separate entities that owned the real estate on which fourteen of the restaurants were situated.   It was merely subject to a condition precedent that CRT's leases be amended to reflect the change in CRT's principals.   Indeed, if Olguin was already a partner in CRT at the time of CRT's purchase of Thomas's interest, the leases for the land on which the

18

**United States District Court**
For the Northern District of California

1  restaurants were situated were not assigned or sublet to anyone,

2  but only amended, and no real estate transaction occurred.

3      In Cambridge Co. v. Arizona Lawn Sprinklers, Inc., 801 P.2d

4  504, 506 (Ariz. App. 1990), the court allowed the plaintiff to

5  recover a fee for assisting in the sale of a corporation even

6  though the plaintiff did not have a real estate broker's

7  license, the sale could have included a real estate transaction

8  and performance of the contract could thus have been illegal.

9  The court stated that the test for an illegal contract focused

10 on how the contract was performed, not how it could have been

11 performed. Id. The court noted that the real estate

12 transaction that did occur did not involve the parties to the

13 contract for the sale of the corporation. Id. Here, the May 8,

14 2004 transaction that did occur involved the amendment of leases

15 to reflect the withdrawal of a partner of CRT, not the

16 assignment or sublease of leases from CRT to another entity;

17 thus, no real estate transaction occurred.

18     Defendants assert that this ruling in Cambridge was

19 overruled by the addition of subsection (n) to section 32-

20 2101(47). Defendants seem to contend that, under subsection

21 (n), even a contract that might include a real estate

22 transaction is illegal. Defendants do not cite any authority

23 for this contention and it is not clear whether it is correct.

24 Even if it is, the court in Cambridge also pointed out that the

25 acquisition of a company that holds leases for land on which it

26 operates can be structured in such a manner that a real estate

27 transaction is not involved (such as through the purchase of

28

stock in the corporation owning the leases).  <u>Id.</u>  Plaintiff's
amended complaint alleges that its contract with CRT excluded
the leaseholds, and that therefore any sale would have been
conducted without a real estate transaction.   Plaintiff may be
able to prove a claim that does not imply a violation of
subsection (n).   Therefore, Defendants' motion to dismiss for
failure to state a claim is denied.

At the hearing, Plaintiff represented that Johnson does
have a California real estate broker's license and that the
Arizona statute allows him to conduct transactions such as the
one at issue.   Although the Court denies Defendants' motion to
dismiss, the Court stated that Plaintiff could, in an abundance
of caution, file an amended complaint to make this allegation.
Plaintiff filed an amended complaint on July 7, 2005.

III.  Venue

Defendants argue that venue should be transferred to the
District of Arizona for the convenience of the witnesses and in
the interests of justice.   In support of their motion,
Defendants argue that most of the known potential witnesses live
in Arizona and that there is no indication that a transfer would
slow proceedings because this Court has not made any rulings.

While Defendants reside in Arizona, Plaintiff and Johnson
reside in California.   Further, as Plaintiff notes, three of the
potential witnesses Defendants have identified, Thomas, Campbell
and Johnson, are parties to the suit.   Defendants have
identified only Olguin and CRT's counsel as possible non-party
witnesses, and have not identified any documentation or other

United States District Court

For the Northern District of California

evidence in Arizona or other factors that would heavily burden Defendants in trying a case in California.  Moreover, Defendants regularly travel outside of Arizona for business purposes.  Plaintiff's choice of venue is not lightly disturbed.  The balance of factors does not strongly favor Defendants so as to overcome Plaintiff's choice.  Therefore, the Court denies Defendants' motion to transfer venue.

                              CONCLUSION

     For the foregoing reasons, the Court DENIES Defendants' motion to dismiss the claims against CRT and Thomas and their alternative motion to transfer venue (Docket No. 23). Defendants' motion to dismiss the claims against Defendant Campbell for lack of jurisdiction is GRANTED.  If Plaintiff were to sue Defendant Campbell in Arizona, however, the Court would transfer this action there.

     IT IS SO ORDERED.


Dated: 7/21/05                    /s/ CLAUDIA WILKEN
                               CLAUDIA WILKEN
                               United States District Judge

21